Date signed March 31, 2014



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | |
|---|---|
| In Re: | |
| Tony Arnel Massenburg | Case No.   12-27073-TJC |
| Debtor | Chapter   7 |

## MEMORANDUM OF DECISION

Roger Schlossberg, the chapter 7 trustee (the "Trustee"), objects to the exemption claimed by the debtor Tony Arnel Massenburg (the "Debtor") to pension funds he received while he was a debtor in chapter 11, before his case was converted to chapter 7. The court determines that further oral argument is unnecessary because the facts and legal arguments are adequately presented in the papers submitted. *See* Local Bankruptcy Rule 9013-1(b)(4). For the reasons stated in this memorandum, the court will overrule the Trustee's objection.

### Findings of Fact

The following facts are not disputed.[1] The Debtor filed for chapter 11 relief on September 18, 2012. He is a former professional basketball player who participated in the National Basketball Association Players' Pension Plan (the "Plan"), which is an Employee

---

[1] As will be discussed, the court entered an order requiring the parties to identify any facts in dispute that required resolution. Neither party identified any such facts.

1

Retirement Income Security Act ("ERISA") qualified pension plan. The Debtor retired from professional basketball in 2007.

On his original and amended Schedule C – Property Claimed as Exempt, the Debtor claimed an exemption for his interest in the Plan in the approximate amount of $600,000, pursuant to Md. Code. Ann., Cts. & Jud. Proc. §11-504(h). Docket No. 17 at 8; No. 31 at 8. No objections were made to the exemption.

The Plan provides for an "Early Retirement Pension," which is defined as "the pension payable to a Player at his Early Retirement Date." Plan at §1.12.[2] As pertinent here, "Early Retirement Date" means "a date after the forty-fifth (45th) anniversary of the Player's date of birth, on which an election made by the Player for an Early Retirement Pension becomes effective . . . ." *Id*. at §1.11. The Plan provides that

> Every Player who was on the Roster of any Member for any three Regular Seasons shall be entitled to elect to receive, in lieu of a Normal Retirement Pension, an Early Retirement Pension and shall be entitled to any Supplemental Pension payable pursuant to Section 3.6 hereof. Such election shall be made at least 90 days prior to the Early Retirement Date and shall be made in writing delivered to the Committee.

*Id.* at §3.4. Further,

> [t]he Early Retirement Pension payable to a Player shall be paid to him commencing on the first day of the first month following the Player's Early Retirement Date ("Early Retirement Pension Commencement Date") and, except *as otherwise provided in Sections 3.10 and 3.11*, shall be paid as a Single Life Annuity in an amount which shall be determined by reducing the Normal Retirement Pension that said Player would have been entitled to on his Normal Retirement Date by the product of 1/180 and the total number of months the Player's Early Retirement Pension Commencement Date precedes the Player's Normal Retirement Date.

*Id.* at §3.5 (emphasis added). Thus, an Early Retirement Pension is payable as a Single Life Annuity, except as provided in §3.10 and §3.11. Sections 3.10(a), (b), (c), and (d)

---

[2] Pertinent excerpts of the Plan were submitted by the Debtor without objection in his February 25, 2014 filing. Docket No. 175-1.

govern the payment of an Early Retirement Pension for a participant who is married as of the Early Retirement Date, of which the Debtor was not. Sections 3.10(e) and 3.11 set forth various options for payment of the Early Retirement Pension for participants who are not married. Specifically, §3.11 provides as follows:

> Every Player electing not to receive a Qualified Joint and Survivor Annuity or Single Life Annuity (whichever is applicable) under Section 3.10, may elect to receive, in lieu of the Normal Retirement Pension or Early Retirement Pension and any Supplemental Pension provided for in this Article, and except as otherwise provided in Section 3.IIA, the Actuarial Equivalent of such pension payable as a Single Life Annuity on the date that said pension would otherwise have become payable in one or more of the following ways:
> (i)    Installments for Life - Paid in equal monthly installments for as long as the Player shall live.
> (ii)   Installments of Fixed Amount- Paid in installments of a specified amount each month.
> (iii)  Installments for a Fixed Period - Paid in equal monthly installments for a fixed number of years.
> (iv)   Installments for a Fixed Period and Life Thereafter- Paid in equal monthly installments for a fixed number of years and for so long thereafter as the Player shall live.
> (v)    Joint and Survivorship Annuity- . . .
> (vi)   Social Security Leveling Option- . . .
> (vii)  Lump Sum- Paid to the Player in one Lump Sum.

*Id.* at §3.11. Thus, under §3.11(vii), a participant could elect to receive the Early Retirement Pension in a lump sum.

In February 2013, the Debtor received his Early Retirement Pension in a lump sum in the amount of $550,429.20, which he deposited into his debtor-in-possession account ("DIP Account"). *See* Docket No. 52-1 at 2. At that time, he was 46 years old. On his monthly operating report filed with the court for that month, the Debtor reiterated that the funds were "exempted on Schedule C." *Id*. Each month the Debtor withdrew funds for various expenditures, as reflected on his monthly operating reports. *See* Docket No. 53-1 at 2; No. 58-1

at 2; No. 71 at 3; No. 72 at 3; No. 76 at 2; No. 77 at 2; No. 107 at 2 (monthly operating reports for March through September 2013).

Judy A. Robbins, the United States Trustee (the "UST"), filed a motion to dismiss or convert the case on August 15, 2013. The motion was resolved by the consent of the Debtor, and the case was converted to chapter 7 by order entered on November 13, 2013. After the Trustee was appointed, he froze the DIP Account that contained the remaining pension funds. According to the Trustee, the balance in the DIP Account at that time was $193,327.38.[3]

## Procedural History

The Debtor filed an emergency motion for turnover of the pension funds on November 27, 2013. He contended that the pension funds were exempt assets and he needed them for living expenses. The Trustee objected to the motion and the court held an emergency hearing on the matter on December 5, 2013. At the hearing, the Trustee argued primarily that the pension funds lost their exempt status because the Debtor commingled the pension funds with estate funds in the DIP Account. The court rejected the commingling argument, finding that the Debtor deposited the pension funds in the DIP Account on the good faith belief that he was required to do so under the requirements of the UST, and that the only non-pension funds that were deposited in the DIP Account were readily identifiable in an amount of $30,012.45. The court ordered the Trustee to turn over to the Debtor all funds in the DIP Account except for $30,012.45, which await further order. Docket No. 132.

The Trustee filed a motion to reconsider the order on December 9, 2013, along with an objection to exemptions and a motion to stay pending appeal. In the motion to reconsider, the Trustee argued that the court erred in rejecting his commingling argument. The Trustee also

---

[3] Because the case was converted to chapter 7, the last monthly operating report filed by the debtor was for September 2013. Docket No 107. As of that date, the balance in the DIP Account was $332,641.12. *Id*. at 2.

4

contended that the court should reconsider its order requiring the turnover of the pension funds in light of the arguments he made in his objection to the Debtor's exemption of those funds. The Debtor opposed all three filings.[4] The court entered an order denying the Trustee's motion for reconsideration to the extent it was based on the commingling argument. Docket No. 148. The court granted the motion, however, to allow the parties to address the Trustee's objection to the exemption in a more orderly fashion, considering that the initial hearing was held on eight days notice. *Id*. In doing so, the court required the parties to identify any facts that are in dispute and in need of resolution. *Id*. The Trustee filed his brief in support of his objection to the exemption on January 7, 2014, and the Debtor filed opposition briefs on January 13 and February 25, 2014. Docket Nos. 156, 159, and 175.

## Conclusions of Law

In order to prevail on his objection to exemptions, the Trustee must prevail on two points. First, he must establish that the pension funds lost their protection under 11 U.S.C. §541(c)(2) when the Debtor obtained them post-petition in the chapter 11 case, and therefore they became property of the estate. Second, he must show that the Debtor is not entitled to an exemption of the pension funds under Md. Code. Ann., Cts. & Jud. Proc. §11-504(h) (all citations to this article will be referred as "C&JP"). The burden of establishing that the Debtor is not entitled to an exemption is on the Trustee. Fed. R. Bankr. P. 4003(c).

The court turns to the first issue. Under 11 U.S.C. §541[5], the filing of a bankruptcy creates an estate of all interests of the debtor as of the commencement of the case. Section 541(c)(2), however, provides that

---

[4] Initially, the Debtor argued that the Trustee's objection to exemption was untimely. However, there is now no dispute that the Trustee's objection to the exemption is timely under Fed. R. Bankr. P. 1019(B).
[5] All statutory citations are to 11 U.S.C. §101 et. seq, unless otherwise noted.

> [a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

§541(c)(2). "The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant non bankruptcy law." *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242 (1992). In *Shumate*, the Supreme Court held that the anti-alienation provision in ERISA meets the requirements of §541(c)(2), and therefore a debtor's interest in an ERISA-qualified pension plan is excluded from property of the estate pursuant. *Id.* at 760.

The Trustee does not dispute the foregoing. He points to §1115, which was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. It provides that, in a chapter 11 case in which the debtor is an individual, property of the estate includes all "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case . . . ." §1115(a)(1). The Trustee contends that once the Debtor received the pension funds post-petition, they ceased being subject to the anti-alienation provision in the Plan, and therefore §541(c)(2) no longer applied. He argues that the funds became property of the estate under §1115 when they were received by the Debtor post-petition and pre-conversion.

The court need not resolve this issue. The court will assume that the Trustee is correct that the pension funds became property of the estate when the Debtor acquired them post-petition and before conversion to chapter 7. Nevertheless, for the reasons that follow, the court concludes that the funds are exempt under C&JP §11-504(h).

The Bankruptcy Code provides that certain property of a debtor is exempted from the bankruptcy estate. *See* §522. Pursuant to §522(b)(1), Maryland has opted-out of the federal

6

bankruptcy exemptions, and a Maryland debtor may claim the exemptions allowed under Maryland state law. §522(b)(1); C&JP §11-504(g). As a general matter, exemption statutes are to be liberally construed. *See Hickman v. Hanover*, 33 F.2d 873, 874 (4th Cir. 1929) ("the better and almost universal rule is that such statutes should receive a liberal construction . . . ."). A number of courts, however, do not apply a liberal construction to an exemption without monetary limit such as at issue here, but this view is not universally held. *Compare In re Howland*, 27 B.R. 896, 898 (Bankr. D. Md. 1983), *with In re Rief*, 2008 WL 168951, *4, n.3 (D. Md. 2008) (a strict interpretation with respect to an exemption without monetary limit has not been approved by any Maryland court or the Fourth Circuit).

The applicable Maryland exemption statute states:

> (h)(1) In addition to the exemptions provided in subsection (b) and (f) of this section and any other provisions of law, any money or assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under § 401(a), § 403(a), § 403(b), § 408, § 408(A), § 414(d), or § 414(e) of the United States Internal Revenue Code of 1986, as amended or § 409 (as in effect prior to January 1984) of the United States Internal Revenue Code of 1954, as amended, shall be exempt from any and all claims of the creditors of the beneficiary or participant, other than claims by the Department of Health and Mental Hygiene.

C&JP §11-504(h). There is a long history of Maryland bankruptcy courts, and more recently, the district court, interpreting the phrase "money payable" in C&JP §11-504(h) and in a similar Maryland exemption provision, C&JP §11-504(b)(2).[6] In *In re Howland*, 27 B.R. 896 (Bankr. D. Md. 1983), the court was required to determine whether C&JP §11-504(b)(2) protected life

---

[6] Section 11-504(b)(2) of the C&JP provides:
(b) The following items are exempt from execution on a judgment:
* * *
(2) Except as provided in subsection (i) of this section, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

7

insurance proceeds that the debtor received post-petition, but which were property of the estate under §541(a)(5)(C). While recognizing that the statute "is not a model of clarity," the court concluded that the insurance proceeds held by the debtor were exempt. In a subsequent case, the court relied on *Howland* in concluding that life insurance proceeds are exempt under C&JP §11-504(b)(2). *In re Kleinman*, 274 B.R. 171 (Bankr. D. Md. 2002). Noting that *Howland* exempted insurance proceeds "in the hands" of the debtor, the court observed that *Howland* was the law in Maryland for more than 18 years and the Maryland legislature had not overruled the result. *In re Kleinman,* 274 B.R. at 173.

Section 11-504(h) of the C&JP was addressed specifically by the United Stated District Court for the District of Maryland in *Wolf v. Gibson (In re Gibson)*, 300 B.R. 866 (D. Md. 2003). In *Gibson*, days before the debtor filed for bankruptcy relief, she withdrew $29,000 from her retirement account and deposited it into a credit union account. The funds were eligible to be rolled over into an Individual Retirement Account ("IRA") within 60 days without losing their tax exempt status, although the debtor had not done so as of the petition date. As pertinent here, the debtor claimed $20,000 of the funds as exempt under C&JP §11-504(h). The chapter 7 trustee objected, arguing that the funds lost their exempt status as retirement funds because they were received by the debtor and not rolled over into an IRA as of the petition date. The bankruptcy court ruled that if the debtor rolled the funds over into an IRA before the 60-day period expired the funds would retain their exempt status under C&JP §11-504(h).

The district court held that the funds did not lose their exempt status under C&JP §11-504(h). Although the case is not directly on point because the funds in *Gibson* were rolled over into a qualified IRA after the petition date, the rationale of the case applies equally here:

> Appellant cites a number of cases standing for the proposition that a debtor's entitlement to claim an exemption for retirement funds in

8

>bankruptcy expires immediately upon distribution of the funds. These cases, however, do not involve an exemption scheme like the one in effect in Maryland. Section 11-504(h) exempts "money payable from" and "any interest in" a retirement plan. This exemption provision is broader than the federal exemption scheme, which provides exemption protection to an individual's "right to receive" and has been interpreted as terminating immediately upon distribution or receipt of the funds. *See In re Cesare,* 170 B.R. 37 (Bankr. D. Conn. 1994). By opting out of the federal scheme and utilizing the broader terms "money payable" and "interest in," the Maryland legislature has indicated an intent to protect retirement funds in a bankruptcy proceeding to a greater degree than available under the federal law. In fact, upon reviewing the language of § 11-504, Maryland courts have read the term "money payable" to include funds "in the hands" of the debtor. *See In re Kleinman,* 274 B.R. 171 (Bankr. D.Md. 2002). In *Kleinman,* the court applied this reasoning to find the debtors entitled to an exemption under 11-504(b)(2) for funds already distributed and received. *See id.* at 172 (citing *In re Howland,* 27 B.R. 896 (Bankr. D. Md. 1983)).

*Gibson*, 300 B.R. at 870-1 (footnote omitted). The court cited approvingly to *In re Ladd*, 258 B.R. 824 (Bankr. N.D. Fla 2001), in which the bankruptcy court held that funds received prepetition by the debtor that were traceable to a qualified 401(k) plan did not lose their exempt status. As the court in *Gibson* recognized, the Florida exemption statute in *Ladd* was "almost identical" to C&JP §11-504(h). *Gibson*, 300 B.R. at 871.

The Maryland bankruptcy court revisited the scope of C&JP §11-504(h) in *In re Sunstrom*, 2012 WL 5305807, *2 (Bankr. D. Md. Oct. 26, 2012). There, the debtor received retirement funds prepetition that were deposited in bank accounts, and there was no opportunity for the debtor to roll them over. The bankruptcy court applied the rationale of *Gibson* and the earlier cases, and it concluded that traceable qualified retirement funds received prior to the petition date were exempt under C&JP §11-504(h). *Sunstrom* at *3.[7]

These cases fully support the Debtor's claim to an exemption under C&JP §11-504(h) to the traceable pension funds. The Trustee seeks to distinguish *Gibson* and *Sunstrom* on several grounds. He argues that the pension funds lost their protection under C&JP §11-504(h) when the

---

[7] The *Sunstrom* opinion also addressed social security benefits, which are not at issue here.

Debtor commingled them with other funds in the DIP Account. The court has previously rejected this argument, finding that the Debtor had a good faith belief that he was required by the UST requirements to deposit the funds in the DIP Account, and that the only non-pension funds that were deposited in the DIP Account were readily identifiable in an amount of $30,012.45. Docket No. 148 at 3, 4. The balance in the DIP Account never fell below the amount of non-pension funds deposited into it, and there is no doubt that the funds in the DIP Account in excess of the non-pension funds, $30,012.45, are directly traceable to the pension funds. Further, the estate is fully protected by the requirement that the Trustee retain $30,012.45 subject to further proceedings.

The Trustee further argues that *Gibson* and similar decisions are grounded in the public policy that retirement funds should be available for workers to support themselves and dependents during their retirement years. He argues that the policy does not apply here because the Debtor dissipated 65% of the pension funds from February 2013 to November 2013. The Debtor spent the funds while he was in chapter 11, and no one challenged that they were exempt or that they were his to spend freely. In any event, even if it is true that the Debtor "dissipated" the funds, the policy behind C&JP §11-504(h) remains vital. Neither the legislature nor the court can control what a debtor does with exempt funds.

The Trustee also contends that the Debtor took the pension funds as a pre-retirement withdrawal and therefore they lost their retirement fund status. He relies on *United States v Smith*, 47 F.3d 681 (4th Cir. 1995). In *Smith*, the Fourth Circuit considered whether the anti-alienability provision of ERISA prevented a court from requiring a defendant to pay a restitution order from payments received from an ERISA-qualified plan. The court reemphasized the "strong public policy against the alienability of an ERISA plan participant's benefits," *id.* at 682,

and concluded that such a restitution order violated ERISA.  The court distinguished between "funds disbursed from an ERISA plan before an employee has retired and such funds paid as an annuity for retirement purposes."  *Id.* at 683.  It concluded that

> [w]here an employee elects to draw on her ERISA plan prior to retirement, she forfeits the protection provided by the Act.  Where, however, the funds are paid pursuant to the terms of the plan as income during the retirement years, ERISA prohibits their alienation.

*Id.*

The Trustee's reliance on *Smith* is unavailing.  *Smith* addressed the anti-alienability provision of ERISA.  The Trustee does not explain how *Smith* applies in the context of C&JP §11-504(h), and it would seem to have no application to the interpretation of that provision.

In any event, the Trustee made this argument before the Debtor submitted the excerpts from the Plan, described in the Findings of Fact.  It is now clear that the Debtor's receipt of the funds was an authorized retirement distribution under the Plan in the form of an Early Retirement Pension available upon reaching the Early Retirement Date.  Nothing in C&JP §11-504(h) requires different treatment for funds received through an authorized, plan-approved, early retirement distribution provided the plan is qualified under the applicable provisions of the Internal Revenue Code.  Whether a pre-retirement cash-out is treated differently under C&JP §11-504(h), as the Trustee contends, is not at issue here.

The court finds the rationale of *Gibson* and *Sunstrom* persuasive, especially considering the longstanding *Howland* and *Kleinman* decisions, and further finds the Trustee's effort to distinguish them unconvincing.  The court concludes that the traceable pension funds that were received by the Debtor during the chapter 11 case, but before conversion are exempt under C&JP §11-504(h).

## Conclusion

For the foregoing reasons, the court overrules the Trustee's objection to the Debtor's claim of exemption to the pension funds. A separate order will issue.

cc:	Debtor
	Debtor's counsel
	Chapter 7 Trustee
	United States Trustee

**END OF MEMORANDUM**