IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: ) | |
| TONY ARNEL MASSENBURG, ) | Case No. 12-27073-TJC |
| ) | |
| Debtor. ) | (Chapter 7) |
| ) | |

**TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION
TO REQUIRE CHAPTER 7 TRUSTEE TO TURNOVER
THE REMAINING $30,012.45 OF DEBTOR'S NBA PENSION FUNDS**

Plaintiff, Roger Schlossberg, Trustee ("Plaintiff" or "Trustee"), by and through his undersigned counsel, hereby opposes the *Debtor's Motion to Require the Chapter 7 Trustee to Turnover the Remaining $30,012.45 of Debtor's NBA Pension Funds*, and states:

**I.     INTRODUCTION AND STATEMENT OF FACTS**

The instant bankruptcy case was commenced upon the filing by the Debtor, Tony Arnel Massenburg ("Debtor" or "Massenburg"), of a *Voluntary Petition* under Chapter 11 of the Bankruptcy Code on September 18, 2012 (the "Petition Date"), and an order for relief thereupon was entered. By *Order Converting Chapter 11 Case to a Case Under Chapter 7* (the "*Conversion Order*") of this Court dated November 13, 2013, said Chapter 11 proceedings were converted to a case under Chapter 7 of the Bankruptcy Code. Upon conversion of the instant case from a proceeding under Chapter 11 to a case under Chapter 7, Roger Schlossberg duly was appointed Chapter 7 Interim Trustee. Following the commencement of that Meeting of Creditors required by 11 U.S.C. § 341 on December 17, 2013 without the request by creditors for the election of a trustee as permitted by 11 U.S.C. § 702(b) and (c), Mr. Schlossberg's appointment ripened into that of permanent Chapter 7 Trustee pursuant to the provisions of 11 U.S.C. § 702(d).

1

On February 1, 2013, the Debtor deposited into his Debtor-in-Possession bank account (the "DIP Account") a lump-sum distribution of $550,429.20 from his National Basketball Association Early Retirement Pension ("the Pension Funds"). This Court later determined that the Pension Funds were exempt assets notwithstanding that the Debtor had commingled the Pension Funds with other, non-exempt assets in the DIP Account. *See In re Massenburg*, 508 B.R. 362 (Bank. D. Md. 2014); *Memorandum Opinion* (Dkt. #182). Consequently, this Court ordered the Trustee to turn over to the Debtor the balance of the funds remaining in the DIP Account as of the time it was surrendered to the Trustee, less the sum of $30,012.45 which represented the aggregate of non-pension funds deposited into the DIP Account during the Chapter 11 administration. *See Order Denying Objections to Exemptions* (Dkt. #183).

Now, nearly 18 months later, the Debtor seeks an Order requiring the Trustee to turn over the retained sum of $30,012.45, which the Debtor contends is part of the exempt Pension Funds he deposited into his DIP Account. To hold otherwise, according to the Debtor, would mean that the Debtor paid his "necessary expenses" during the Chapter 11 administration "exclusively with his exempt [P]ension [F]unds" – a result the Debtor contends would be "inequitable." For the reasons set forth below, the Debtor's contentions are fatally flawed and his motion must be denied.

II.   ARGUMENT

    A.   The Trustee Is Not Holding Any of the Debtor's NBA Pension Funds.

An examination of the Debtor's finances reveals that since Feb. 1, 2013 the Debtor has made use of more than $550,429.20 (*i.e.*, the full extent of the Pension Funds deposited in the DIP Account). Indeed, subsequent to his Feb. 1, 2013 deposit of the Pension Funds in the DIP Account through Dec. 4, 2013 (the date the Trustee received from Wells Fargo Bank the balance of

2

$193,327.28 then remaining in the DIP Account), the Debtor spent $397,165.[1] Thereafter, the Trustee tendered $10,000.00 to the Debtor on Dec. 23, 2013 and $157,314.93 to the Debtor on April 1, 2014 pursuant to Orders of this Court. *See* Trustee's Cash Receipts and Disbursements Record, ***Ex. 1***; *see also Order Granting Motion to Reconsider in Part* (Dkt. #148); *Order Denying Objection to Exemptions* (Dkt. #183). Thus, subsequent to his deposit of the Pension Funds, the Debtor has received and/or spent a total of $564,479 – a sum which exceeds the amount of Pension Funds deposited by $14,050. Accordingly, it is apparent that the sum of $30,012.45 retained by the Trustee is not part of the Debtor's Pension Funds but, rather, consists entirely of non-exempt funds.[2]

> **B.    The Debtor is Not Equitably Entitled to Any of the Non-Exempt Funds Held by the Trustee.**

Because the Debtor has spent (or has been paid) $14,050 *more* than what he received in Pension Funds, the amount spent in excess of the Pension Funds deposited necessarily is derived from non-exempt funds. Given that the Debtor already has received the benefit of $14,050 in non-

---

[1] According to the Debtor's final Chapter 11 Monthly Operating Report, the Debtor had aggregate expenses of $344,106 from Feb. 1, 2013 through Sept. 30, 2013. *See Monthly Operating Report* for Sept. 2013 (Dkt. #107) at p. 6. Further, between Sept. 30, 2013 and the conversion of the case on Nov. 13, 2013, the aggregate balance in the Debtor's Wells Fargo and Navy Federal accounts decreased by $38,459 (from $332,641 to $294,182). *Compare Final Report of Debtor as Debtor-in-Possession Upon Conversion of Chapter 11 Case to Chapter 7 Case* (Dkt. #191) at p. 1 *with Monthly Operating Report* for Sept. 2013 (Dkt. #107) at p. 2. Thereafter, between Nov. 13, 2013 and Dec. 4, 2013, the balance in the Wells Fargo DIP Account decreased by $14,600 (from $207,927 to $193,327). *Compare* Trustee's Cash Receipts and Disbursements Record, attached hereto as ***Exhibit 1***, *with Final Report of Debtor as Debtor-in-Possession Upon Conversion of Chapter 11 Case to Chapter 7 Case* (Dkt. #191) at p. 1.

[2] Indeed, immediately prior to the deposit of the Pension Funds, the Debtor maintained $14,703 in the DIP Account. Subsequent to Feb. 1, 2013, the Debtor received $15,309 in income from non-exempt sources prior to the conversion of this case to Chapter 7. The pre-existing balance in the DIP Account plus the $15,309 in income received after Feb. 1, 2013 equals the $30,012 in non-exempt funds the Trustee retained pursuant to this Court's *Order Denying Objections to Exemptions* (Dkt. #183).

3

exempt funds, it follows that the Debtor may assert a claim to no more than $15,962 of the $30,012 retained by the Trustee. Moreover, for the reasons that follow, the Debtor is not equitably entitled to any of the $15,962 to which he could possible make a claim.

A debtor-in-possession in Chapter 11 has the powers and duties of a trustee, including the duty to maximize the value of the estate for the benefit of creditors. *See* 11 U.S.C. § 1107(a); *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of creditors."); *accord In re JTR Corp.*, 958 F.2d 602, 604-05 (4th Cir. 1992). Thus, at a minimum, Massenburg, as a debtor-in-possession, had a duty to preserve (if not enhance) estate assets for the benefit of his creditors. The result Massenburg seeks, however, is one in which *all* of the non-exempt assets of his Chapter 11 estate are consumed by him for his personal foibles – leaving nothing for his creditors. Such an outcome would be patently inconsistent with Massenburg's fiduciary duty as a debtor-in-possession.[3] *See In re Bowman*, 181 B.R. 836, 844 (Bankr. D. Md. 1995) ("A debtor-in-possession cannot ignore his fiduciary obligations by putting his own interests before those of his beneficiaries, the creditors.") (citations omitted).

Although the Debtor whines that it would be "inequitable" for him to have paid his "necessary expenses"[4] during the Chapter 11 administration with Pension Funds, his complaint

---

[3] Indeed, Massenburg created the present conundrum by commingling his Pension Funds in the DIP Account with non-exempt assets. Had he segregated the Pension Funds, the present issue almost certainly would not have arisen.

[4] Using as a benchmark his average monthly spending in the four months preceding the deposit of the Pension Funds in the DIP Account, the Debtor suggests that $12,671.00 per month is a reasonable figure for his "necessary expenses." Massenburg, however, provides no detail as to the expenses that comprise his "necessary expenses" and merely assumes that every payment he made was a "necessary expense." Furthermore, although his figure closely approximates the aggregate monthly expenditures he disclosed on his Amended Schedule J (which reported $12,988 in average monthly expenses), his scheduled expenses included $4,915.00 in monthly installment payments

4

rings hollow. First, the Debtor already has obtained the use of $14,050 in non-exempt funds (which presumably was used to pay for his "necessary expenses"). Moreover, given his lack of regular income, the Debtor chose to use his Pension Funds to defray his personal expenses, *see* Debtor's *Emergency Motion for Turnover* (Dkt. #120) at ¶ 6 ("The Debtor has been utilizing the Pension [F]und to pay his ordinary living expenses"), and originally sought turnover of the Pension Funds so that he could continue to use his Pension Funds in this manner. Simply put, there is nothing inequitable about a result in which the Debtor is given what he asked for.

      Rather than act as a prudent fiduciary while he was a debtor-in-possession, Massenburg lived above his means and chose to engage in profligate spending.[5] He churned through prodigious sums of money as fast as he received it,[6] notwithstanding that he scheduled in excess of $1 million in debts to creditors. Having mismanaged the estate as a debtor-in-possession, Massenburg's fiduciary missteps should not be rewarded with funds that should be preserved for the benefit of his creditors. In short, the Debtor "having made his bed, must lie in it." *See Johnson v. Commissioner*, 720 F.2d 963 (7th Cir. 1983).

---

owed by his girlfriend, Lainie Nikes, for student loans, vehicle loans, credit cards, and rent, as well as another $256 in monthly utilities owed by Ms. Nikes.

[5] For example, just three weeks after receiving the Pension Funds, the Debtor spent $97,449.40 to purchase a 2010 Porsche Panamera Turbo. Moreover, at a prior hearing in this matter, the Debtor testified that he spent thousands of dollars on clothes. *See Order Granting Motion to Reconsider in Part* (Dkt. #148) at 5, n.3

[6] Indeed, the Debtor's income from all sources from Feb. 1, 2013 through Dec. 4, 2013 ($565,738) exceeded his total expenditures ($564,479) by just $1,259. *See Monthly Operating Report* for Sept. 2013 (Dkt. #107) at p. 6. Thus, in just those 10 months, the Debtor burned through cash at a rate of more than $56,000 per month.

### III.    CONCLUSION

WHEREFORE, in consideration of the foregoing, the Trustee respectfully requests that the *Debtor's Motion to Require the Chapter 7 Trustee to Turnover the Remaining $30,012.45 of Debtor's NBA Pension Funds* be DENIED.

                                              Respectfully submitted,

                                              SCHLOSSBERG & MASTRO

By:   */s/ Frank J. Mastro*
        Roger Schlossberg
        Frank J. Mastro
        18421 Henson Blvd., Suite 201
        Hagerstown, MD 21742
        (301) 739-8610
        *Attorneys for Trustee*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this *17th* day of *September, 2015*, I served a copy of the Trustee's Opposition to Debtor's Motion to Require the Chapter 7 Trustee to Turnover the Remaining $30,012.45 of Debtor's NBA Pension Funds via ECF upon:

Eric H. Kirchman, Esq.
15 W. Montgomery Ave. #205
Rockville, MD 20850
*Attorney for Debtor*

        /s/ Frank J. Mastro
Frank J. Mastro