UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

_____

In re:                                    ]
                                          ]
TONY ARNEL MASSENBURG,      ]    Case No 12-27073-TJC
                                          ]    Chapter 11
            Debtors.                 ]
_____]

**OBJECTION TO
<u>APPLICATIONS FOR COMPENSATION FOR ROGER SCHLOSSBERG</u>**

TO THE HONORABLE THOMAS J. CATLIOTA, BANKRUPTCY JUDGE:

COMES NOW the Law Offices of Jeffrey M. Sherman ("Attorneys"), former counsel to Tony Arnel Massenburg, debtor ("Debtor"), and an administrative priority creditor, and as its Objection to Applications for Compensation of Roger Schlossberg ("Applications"), respectfully represents as follows:

1. The Attorneys hold an administrative priority claim in the amount of $15,994.00 in fees awarded, and $83.86 in expenses awarded, pursuant to a Consent Order ("Consent Order") dated December 19, 2013 (Docket #146).

2. On or about March 15, 2019, Roger Schlossberg ("Trustee") filed the Applications, one for himself as trustee (Docket #310), and one for his law firm (Docket #309).

3. The Attorneys object to the requests for compensation, on the following grounds, in addition to such other grounds as may appear:

    A. Trustee compensation falls into two categories: time spent as trustee and time spent as trustee's counsel. Preliminarily, the Attorneys note that the mere presence of time records does not carry the day: "Time actually expended is not necessarily time reasonably

1

expended." *Matter of Boston and Maine Corp.*, 46 B.R. 990, 993 (D.Mass. 1985). Nevertheless, the attachment to the application for compensation of the Trustee as trustee's counsel consists of what appears to be the entirety of services rendered by the Trustee, both as trustee and as trustee's counsel, noting some entries being charged at an hourly rate (presumably for services as trustee's counsel) and some at no hourly rate (presumably for services rendered as trustee). The last page of the compendium references total hours of 654.2, but the compendium does not disclose if this is just attorney time listed therein, or both trustee and attorney time totaled. The Application itself merely references the compendium and its total of 654.2 hours. It does not appear that the Trustee has segregated (although he may have accounted for) trustee time versus attorney time in a meaningful way.

In addition, there are innumerable instances where work performed by the Trustee appears to have been charged as attorney time, rather than trustee time, despite the identified tasks more properly being characterized as trustee time.[1] See, e.g., *In Re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (D.Alaska, 1984) (it is the burden of the applicant to demonstrate that the services for which professional compensation is sought involve some legal service beyond the scope of the trustee's statutory duty); *Matter of Interstate Stores, Inc.*, 437 F. Supp. 14, 17 (S.D.N.Y. 1977). For example, on the very first page of the compendium, on 11/13/13, the Trustee charges 12 minutes, as his own attorney, for review of an email from the Office of the

---

[1] "The function of an attorney for the trustee is to render to the estate those services which cannot and should not properly be performed by one who does not have a license to practice law. *See In Re Meade Land Development Co., Inc.*, 527 F.2d 280, 284-85 (3d Cir. 1975). *See also House Report* No. 95-595, 95th Cong., 1st Sess. 328-29 (1977); *See Senate Report* No. 95-989, 95th Cong., 2d Sess. 39 (1978), U.S. Code Cong. Admin. News 1978, 5787…."

*In re Shades of Beauty, Inc.*, 56 B.R. 946, 949 (Bankr. E.D.N.Y. 1986).

United States Trustee ("OUST") about a planned discussion of the case, immediately after charging, as trustee, for reviewing emails from the OUST regarding DIP accounts.  No explanation is given why reading an email takes 12 minutes, or why reading an email from the OUST regarding a meeting about the case is qualified as attorney time rather than trustee time, given the other services charged as trustee that same day.  Further, the Trustee, on 11/21/13, charged time as his own attorney (.3 hours total), to review a notice of Attorneys' fee application and the application itself, although such review appears to more properly be considered trustee time.  An attorney for a trustee is never entitled to compensation for duties which are imposed upon the trustee. See e.g. *In Re Mabson Lumber Co., Inc.*, 394 F.2d 23, 24 (2d Cir. 1968); *In Re Harman Supermarket, Inc.*, 44 B.R. 918, 920 (Bankr.W.D.Va. 1984); *In Re Auto Train Corp.*, 15 B.R. 160, 161 (Bankr.D.D.C. 1981).  On 11/26/13 (p. 2), the Trustee charges 15 minutes (.25 hours) for doing something, presumably reading, an email form the OUST.  Again, it is impossible to discern why this time should be charged as attorney time rather than trustee time. (In addition, it is expected that time is charged in increments of $1/10^{th}$ of an hour, not ¼, as the Trustee has done repeatedly throughout the compendium.[2])  The repetitive charging of trustee time as attorney time has resulted in an inflated charge for attorney time.

At least one court has catalogued the kinds of services that should be rendered through and performed by the trustee qua trustee.  See *In re Cmty. Home Fin. Servs., Inc.*, CASE NO. 1201703EE (Bankr. S.D. Miss. Oct. 27, 2015):

---

[2] According to the "United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses under 11 U.S.C. §339 (January 30, 1996): "Time entry should be kept contemporaneously with the services rendered in time periods of tenths of an hour."  The use of quarter-hour increments is improper; quarter-hour units generally overstate the actual time expended. *In re Bass,* 227 B.R. 103, 107 (Bankr.E.D.Mich.1998); *In re Stoecker,* 114 B.R. 965, 976 (Bankr.N.D.Ill.1990); *In re Wildman,* 72 B.R. 700, 726 (Bankr.N.D.Ill.1987).  See "Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland," Local Bankruptcy Rules, Appendix D ("Each professional and paraprofessional should record time in increments of tenths of an hour and keep contemporaneous time records.").

      a. Reviewing the Debtor's Records;

      b. Investigating Estate Property;

      c. Communicating with Other Parties;

      d. Reviewing and Objecting to Claims;

      e. Communicating with and Supervising Estate Professionals;

      f. Collecting and Liquidating Estate Assets; and

      g. Performing Banking Functions/Bookkeeping.

*In re Cmty. Home Fin. Servs., Inc.*, at *24-8 (Bankr. S.D. Miss. Oct. 27, 2015) (string citations and references omitted). Nevertheless, the compendium repeatedly demonstrates tasks performed by the trustee within these categories being charged by the Trustee as his own attorney, or by Mr. Mastro as the trustee's counsel. These tasks are not compensable as attorney time; they constitute trustee time tasks. The burden is on the Trustee to demonstrate how each and every such task constitutes attorney time and not trustee time.

> The burden of proof remains upon the trustee-attorney to demonstrate that any service for which attorney compensation is sought cannot be performed practically or lawfully except by an attorney and that the compensation standards of § 330 are satisfied. . . . To the extent that the trustee-attorney fails to demonstrate the necessity of the legal services or the description of such services improperly lumps legal and trustee services together, attorney compensation for those services will be disallowed.

*In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 792 (Bankr. E.D. Tex. 2000)

      Further discourse on the division of serviced between attorney and trustee time is required in order to fully develop the entitlement of the Trustee to compensation as trustee and as his own attorney.

      B. The Hagerstown aspect of this matter is reflected in two ways: first, the Trustee is charging time for services rendered in this case at rates charged by attorneys located in

the immediate Washington, DC, area, not in Hagerstown. Because the Trustee has chosen to locate his practice in Hagerstown, that is the market against which his attorney time should be measured. Accordingly, the rates prevalent in Hagerstown should be used as the market rate for attorney time spent by the Trustee. The Attorneys submit that the range of rates charged by the Trustee in other matters, as disclosed in the Applications, is much lower than the rate charged here throughout the representation. Because the burden is on the Trustee to demonstrate his entitlement to compensation[3], the Court must conclude that he has failed to meet his burden on the proper rate to be allowed for his attorney time. Second, the Trustee's counsel appears to regularly charge the full hourly rate (see, e.g., 12/5/13) – 1.25 hours to Greenbelt; 1.75 hours return), for the full amount of time, spent traveling between Hagerstown and Greenbelt. Travel time is not compensable at full rate or full time, even if the time is spent working – there is no evidence that the travel time here was actually spent working. See, e.g., *In re Anderson Grain Corp.*, 222 B.R. 528, 532 (Bankr. N.D. Tex. 1998) (one-half the usual hourly rates for time actually spent working on a matter while traveling more than adequate); *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 251 (Bankr. N.D.N.Y. 1997) ("travel time will be compensable at one-half normal rates unless the Court is satisfied that work was performed during travel"). A review of the entirety of the compendium, to identify and discount fully charged travel time, is appropriate.

    C. It has been long settled that the results obtained by professionals rendering services to a bankruptcy estate are a heavily weighted factor in determining their just

---

[3] "The burden of proving the reasonableness of compensation and reimbursement pursuant to 11 U.S.C. § 330 is on the fee applicant." *In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D. Tex. 1993); s*ee, also, In Re Lafayette Radio Electronics Corp.,* 16 B.R. 360 (Bankr.E.D.N.Y. 1982) (in order to enable the court properly to evaluate the "cost of comparable services", the applicant must provide the court with sufficient information for it to make an informed, well-reasoned determination).

compensation. *See, e.g., Guterman v. C.D. Parker Co., Inc.*, 86 F.2d 546 (1st Cir. 1936) (an important consideration in determining what are reasonable fees of an attorney in a bankruptcy proceeding is the benefit derived from his services by the entire body of creditors); accord, *In re Universal Lubricating Systems, Inc.*, 165 F.2d 664 (3rd Cir. 1948). It has also been noted that "the majority of [c]ourts agree that the results obtained is a major factor in determining whether the services at issue bestowed a benefit upon the estate." *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr.W.D.Ky.1996). Without a benefit being conferred upon the estate, compensation for such unnecessary and self-serving services should be disallowed. *In re Unitcast, Inc.*, 214 B.R. 992, 1009 (Bankr.N.D.Ohio 1997) ("when a professional's efforts have failed to produce a significant benefit, the task of proving the reasonableness of the fees to the Court becomes unsurprisingly more difficult").

The results obtained in this case are shocking. The Trustee – for himself and as his own counsel – will consume 100% of the money collected. Other creditors – administrative, priority or unsecured -- get absolutely nothing from the Trustee's years of work. Because the Trustee apparently never filed an interim request for compensation, or otherwise disclosed to the creditors the expense to which he was going to administer the estate, no party could determine that this case was going far beyond any semblance of reasonableness, given that the Trustee appears to have been working only for himself in effect. It simply shocks the conscience that the Trustee would have spent years administering this estate only to leave absolutely nothing for the creditors, choosing instead to pay himself the entirety of the estate's proceeds.

The Trustee is a fiduciary for the creditors, not himself. *Continental Ill. Nat'l Bank Trust Co. of Chi v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1323 (5th Cir. 1989) ("trustees and attorneys for trustees are held to high fiduciary standards of conduct"). He

6

discharges that fiduciary duty by acting in the best interests of the creditors, not himself. His efforts and activity must be oriented towards paying creditors, not himself. Nevertheless, at some point, a trustee as experienced and expert as the Trustee here must have recognized that the creditors were not benefitting whatsoever from his actions. It was incumbent upon the trustee to either tell the creditors that his work will yield nothing for them, so that they might seek an early termination of the administration of the estate, or else modulate his activity, even if it means greatly discounting his fees or commissions, so that the creditors do indeed benefit from his services, rather than persistently benefitting only himself. Clearly, at the point where the administration or the estate could have, and should have, been seen to be futile vis-à-vis distribution to creditors, the trustee should have ceased administering the insolvent estate and closed the case; instead, he chose to further administer the estate and pay himself tens of thousands of dollars, producing nothing – *nothing* – for every other claimant in this case.[4] Maintenance of the administration of this estate, when its futility and insolvency was and should have been known to the Trustee, is a breach of the trustee's statutory fiduciary duty.

> The Order authorizing an attorney's retention is not a carte blanche invitation to deplete the estate by the payment of legal fees. To avoid the temptation of rendering and then billing for services which may not be necessary and appropriate, before performing any service, the attorney must scrupulously weigh and be prepared to defend the propriety of each task for which he will be seeking compensation…. To undertake a thorough analysis, an attorney must consider the following questions: are the contemplated services appropriate in view of the size of the estate….; if the contemplated services are rendered successfully, is there a reasonable likelihood that there will still be a net benefit to the estate after professional fees are paid; is the burden of the probable cost of legal services disproportionately large in relation

---

[4] It has become a growing practice for trustees to sell over-encumbered assets, despite the limitation on doing so under the OUST Guidelines and applicable case law, where the sale will yield a result that benefits the estate, and not just the trustee. Practice has developed that requires that half the proceeds of a "carve out" on an over-encumbered asset sale be reserved for the creditors, even if that means that the trustee gets less than everything he might claim to be entitled to. Such a protocol should inform the Court here as well.

>to the size of the estate and maximum probable recovery; to what extent will the estate suffer if the services are not rendered; to what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully? Such an analysis is a necessary part of any professional fee application.

*In re Shades of Beauty, Inc.*, 56 B.R. 946, 950 (Bankr. E.D.N.Y. 1986) (citations omitted). Clearly, the Trustee did none of these things.

At a minimum, a significant portion of the funds in the estate should be set aside and designated for distribution to claimants other than the Trustee and his own counsel.

D. Efforts of the Trustee in some contexts were wasteful, unnecessary and unproductive. While the Attorneys were only involved in the case for a brief period, during that period of time, the Trustee charged a substantial sum for services rendered in connection with his blatantly improper seizure of the Debtor's retirement funds. The time spent by the Trustee, as his own counsel, preparing for, researching traveling to and frim and actually litigating, repeatedly, the entitlement of the Debtor to the manifestly exempt retirement funds, were all for naught, and should have been recognized by the Trustee – vastly experienced and knowledgeable – that such a seizure was certainly wrong. The Trustee lost this expensive and unmeritorious defense of his seizure and retention of the retirement funds. While the Attorneys do not suggest that every lost case should not be paid for, the Trustee here should have immediately recognized what this Court ultimately stated: these funds belong exclusively to the Debtor under *Patterson v. Shumate*, and the Trustee had no right to seize and retain them to the Debtors' economic detriment. Other actions of the trustee appear to be "overkill" relative to the financial result obtained. Spending $25,000 to pursue claims that wind up being settled for less, for example, is not an appropriate use of attorney time, or a furtherance of the discharge by the Trustee of his fiduciary responsibilities to the creditors.

E.  Time entries reflect repeated charges for "attempting" to place telephone calls, at 6 minutes apiece.  For example, on 11/27/13, 12/23/13, 12/26/13, etc., there are charges of 6 minutes each for attempts to place telephone calls, charged as attorney time even though the substance of the "attempt" is not disclosed (furthering the objection made by the Attorneys that attorney and trustee time is indistinguishably intermingled).  It is also surprising that the dialing of a telephone takes anyone six minutes, and that you must be an attorney to do so.

The exercise of billing discretion is what bankruptcy professionals are expected to do, rather than charging every iota of consciousness generated with respect to the case.  An experienced trustee, such as the Trustee here, should know better, for example, than to charge for failed telephone dialing.  See, e.g., *In re at Comm Corporation*, No. 01-32123-TC, *16-7 (Bankr. N.D. Cal. Sep. 19, 2003) ("The objecting parties have established clearly that both MM and WSGR failed to use sound billing discretion in submitting and defending their final fee applications."); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)("An applicant for fees should exercise billing discretion and maintain time records in a manner that will enable the court to identify the subject matter of the services.").  Such discretion might also have informed the Trustee not to have both of his attorneys charge time (and full hourly rate, at that) for intra-office conferences, such as that held on 9/2/14, where both attorneys charged time (differing amounts, as well, which is odd).  See also 12/27/17, where two attorneys each charged time for reviewing an incoming order, at their full rates.

Likewise, the necessity to produce time records sufficient to show the services rendered is mandatory in this District.  See "Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland," Local Bankruptcy Rules, Appendix D ("Time records should set forth in reasonable detail an appropriate narrative description of the

services rendered…. Examples of insufficient descriptions include "telephone call," "telephone call to X," "conference with client," "research," "review of documents," "review of pleadings," and "correspondence.")  Nevertheless, the compendium is replete with such insufficient and incomplete descriptors.

F.  The Attorneys join in and adopt the objections filed by the Debtors herein (Docket Nos. 315, 316), and reserve their right to supplement and complement said objections in their own right.

WHEREFORE, the Attorneys respectfully requests that the Court enter the Order:

A.  Sustaining this Objection;

B.  Reducing the award to the Trustee and Trustee's counsel for fees charged consistent with this Objection; and

C.  Granting such other and further relief as is just and proper.

Dated:  April 26, 2019                              Respectfully submitted,

  /S/ Jeffrey M. Sherman
Jeffrey M. Sherman
LAW OFFICES OF JEFFREY M. SHERMAN
1600 N. Oak Street, Suite 1826
Arlington, VA 22209
(703) 855-7394
jeffreymsherman@gmail.com
Former attorneys for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by first class mail, or, where available and proper under applicable Rules of this Court, by electronic means, on April 26, 2019, upon the following:

Lynn A. Kohen
U.S. Trustee Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770
lynn.a.kohen@usdoj.gov

Frank J. Mastro
Schlossberg Mastro & Scanlan
P.O. Box 2067
Hagerstown, MD 21742-2067
fmastro@schlosslaw.com

Roger Schlossberg
134 West Washington Street
P.O. Box 4227
Hagerstown, MD 21741-4227
trustee@schlosslaw.com

Daniel M. Press
Chung & Press, P.C.
6718 Whittier Ave., Ste. 200
McLean, VA 22101
dpress@chung-press.com

                                              */S/ Jeffrey M. Sherman*
                                              Jeffrey M. Sherman